[Cite as *State v. Purk*, 2017-Ohio-986.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                              :
                                          :
    Plaintiff-Appellee                  :   C.A. CASE NOS.   27227 and 27228
                                          :
v.                                        :   T.C. NOS. 14CR1585 and 16CR225
                                          :
DONALD L. PURK, II                        :   (Criminal Appeal from
                                          :    Common Pleas Court)
    Defendant-Appellant                 :
                                          :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the _____17th_____ day of _____March_____, 2017.

. . . . . . . . . .

MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

HILARY LERMAN, Atty. Reg. No. 0029975, 249 Wyoming Street, Dayton, Ohio 45409
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1}  This matter is before the Court on the Notices of Appeal of Donald Purk II, filed on August 18, 2016.  Purk appeals from the imposition of consecutive sentences totaling 30 months after he violated community control sanctions in Montgomery County

Case Numbers 2014-CR-1585 and 2016-CR-0225. We hereby affirm the judgment of the trial court.

{¶ 2} On June 20, 2014, Purk was indicted on one count of theft of drugs, a felony of the fourth degree, in violation of R.C. 2913.02(A)(1), in Case No. 2014-CR-1585. The victim of the offense was Grandview Medical Center. A plea of not guilty was entered on October 10, 2014, and on October 22, 2014, Purk filed a "Request for Intervention in Lieu of Conviction." The court granted the motion on February 13, 2015, and stayed all proceedings.

{¶ 3} At his August 10, 2016 disposition for the community control violations, the court noted the following events that occurred after Purk received intervention in lieu of conviction. According to the court, Purk was transferred to Nova House on March 4, 2015, and he completed the program on March 31, 2015. The court further noted that Purk was thereafter released to the Gateway Shelter, and that within one week, he was "admitted to the Behavioral Health Unit in Miami Valley." The court indicated that Purk never reported to probation as required, and that after completing treatment, he was arrested on May 10, 2015, for possession of drug abuse instruments. The court noted that on May 11, 2015, Purk "was transported to Miami County for active warrants pertaining to child support and felony drug possession," and that those incidents occurred before Purk's supervision by the court. The court noted that Purk was granted supervision in Miami County, and that he was transported back to Montgomery County to adult probation.

{¶ 4} The court indicated that on September 3, 2015, Purk was released from jail, and that a warrant was issued for his arrest on January 22, 2016, after he failed to report

to probation as required. The court noted that Purk overdosed at the Gateway Shelter on January 20, 2016, and that he was found in the possession of heroin and needles. The court noted that Purk was arrested on February 3, 2016, at Miami Valley Hospital after being treated for another overdose. The court indicated that "[w]hen interviewed in the jail on February the 5th, you admitted to overdosing three times in four days, finally being arrested at the hospital on the last occasion." Purk was charged with possession of heroin, in violation of R.C. 2925.11(A), a felony of the fifth degree, in Case No. 2016-CR-0225, on February 24, 2016.

{¶ 5} The record reflects that also on February 25, 2016, the trial court issued an "Order Revoking ILC." The order indicates that Purk violated Rule #1, to refrain from any violation of law, based upon his possession of heroin; that he violated Rule #5, to report as directed by his probation officer, after he was declared an absconder on January 22, 2016; and that he violated Rule #6, to not use or possess a controlled substance. On the same date, the court issued a Judgment Entry of Conviction, sentencing Purk to community control sanctions. The record reflects that Purk was also sentenced to community control sanctions in Case No. 2016-CR-0225 on February 25, 2016, a guilty plea having been entered to this new case on the same date.

{¶ 6} On July 26, 2016, the record reflects that the court issued a "Notice of CCS Revocation Hearing and Order" in both cases. The order provides that Purk violated Rule #5 by failing to report to probation, that he violated Rule #6 by using heroin and overdosing on July 13, 2016, and that he violated Rule #2, by failing to complete treatment as recommended by MonDay. The orders indicate that Purk's Ohio Risk Assessment Survey score is in the high range. On August 10, 2016, Purk admitted to violating his

community control sanctions by failing to report to probation and overdosing on heroin. The court noted that "a preponderance of the evidence would support the revocation of his community control status in these cases."

{¶ 7} At disposition, the court noted that Purk was ordered to complete the MonDay program, and that he did so on July 13, 2016. The court noted that Purk was transported to Samaritan Behavioral Health to establish aftercare and to receive the Vivitrol shot, and that "[a]s you were about to receive the shot, you ran away from Samaritan Behavioral." The court noted that "SBHI involved CrisisCare in an attempt to bring you back, concerned of the potential risk if you were to overdose after being in custody for so long." The court indicated that "[n]otwithstanding their efforts, you managed to get away that evening, overdosed again at the Liberty Motel in Dayton. You were taken to Grandview, and you were released before the knowledge of adult probation. On July the 15th, a warrant was issued, and you were arrested on July 21st at Grandview following another heroin overdose." (We note that Purk contested the final overdose at disposition.)

{¶ 8} The following exchange occurred:

MR. DAILEY: Your Honor, I know speaking in chambers we spoke a lot in chambers about this case. I believe - - I know he's had many chances on probation with treatment. He did successfully complete MorningStar, which was inpatient. He successfully completed STOP and - -

THE DEFENDANT: No. No STOP.

MR. DAILEY: You did not do STOP?

THE DEFENDANT: No.

MR. DAILEY: Okay, Well, he successfully completed MonDay, most recently, but he was promised that he would released to his father's funeral prior to being sent to MonDay.

THE DEFENDANT: I don't - - I don't - - I don't want to use that for an excuse. That's not an excuse. That's just - - that's just part of the situation.

MR. DAILEY: And basically, his father had passed three weeks prior to this release, so he didn't have anywhere to go. And with him being diabetic, he was dropped off at a shelter, is my understanding, with a bag full of empty syringes for his diabetic state which didn't - - you know, bode well, especially considering his past that was numerous overdoses right before entrance into the MonDay program.

Now in this case, I know it's the Court's intention to, and it's the probation's recommendation, of incarceration. I believe that Vivitrol shots are probably the only way to save Mr. Purke's [sic] life in the future, and based on his number of prior overdoses. I don't believe that consecutive sentences or max sentences are appropriate in this matter.

Looking at Mr. Purke's [sic] record that I have available in front of me, other than these two cases, he has no other felony convictions. Between - - he does have a misdemeanor theft back in 2007, and other than minor misdemeanors, that's all I see him being convicted of until 2015, which are these cases. These are both nonviolent cases. He has shown that he can

complete inpatient, and I believe his main problem is the suicidal tendencies and the drug use, which I believe Vivitrol and an inpatient, maybe Nova 90-day program, would be sufficient. I just don't think prison is appropriate in this matter. I don't think incarceration, I don't think that findings or the - - I don't think there are findings to support a consecutive sentence, and we ask for a chance on the Vivitrol shot while sitting in an inpatient program.

{¶ 9} In imposing sentence, the court noted as follows:

And so, considering the purposes and principles of sentencing, including avoiding the unnecessary burden on government resources, the seriousness and recidivism factors of the code, the dictates of 2929.13 and as otherwise set out in the code, including Mr. Purke's [sic] present and future ability to pay financial sanctions, the Court orders as follows.

In case 14CR1585, the Court, based on his admission of the violations, revokes his community control status, and I impose a prison term of 18 months which carries with it a discretionary 3 years of post-release control.

In 16CR225, the Court revokes Mr. Purke's [sic] community control status, imposes a prison term of 12 months, which carries with it a discretionary 3-yer period of post-release control.

These prison terms are to be served consecutively * * *.

In ordering consecutive sentences, the Court expressly finds as follows. First, consecutive sentences are necessary to protect the public from future crime and to punish Mr. Purke. [sic] Second, consecutive

sentences are not disproportionate to the seriousness of his conduct, nor to the danger he poses to the public. And third, that he committed the offense in 16CR225 while on community control, and his history of criminal conduct desmonstrates that consecutive sentences are necessary to protect the public from future crime by Mr. Purke. [sic]

{¶ 10} The Judgment Entries of Conviction in both cases provide that the court considered the factors set forth in R.C. 2929.11, 2929.12, and 2929.13. Both entries further provide, consistent with the court's pronouncement at disposition, as follows:

Consecutive sentences are necessary to protect the public from future crime and to punish Defendant. Consecutive sentences are not disproportionate to the seriousness of Defendant's conduct and to the danger Defendant poses to the public. Defendant committed one or more of the multiple offenses while Defendant was under a sanction imposed pursuant to Section 2929.17 ("Non-Residential Sanctions"). Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by Defendant.

{¶ 11} We note that defense counsel objected to the imposition of consecutive sentences at disposition.

{¶ 12} Purk asserts the following assignment of error:

THE COURT IMPOSED CONSECUTIVE SENTENCES INCORRECTLY.

{¶ 13} Purk asserts that the "part of the reasons given for the consecutive sentences do not apply, Defendant has only caused harm to himself and not to the public."

**{¶ 14}** As this Court has previously noted, "community control revocation proceedings are not the same as a criminal trial, and a revocation of community control punishes the failure to comply with the terms and conditions of community control, not the specific conduct that led to the revocation." *State v. Black*, 2d Dist. Montgomery No. 24005, 2011-Ohio-1273, ¶ 17. As this Court further noted:

> Upon revoking community control, the trial court may (1) lengthen the term of the community control sanction; (2) impose a more restrictive community control sanction; or (3) impose a prison term on the offender, provided that the prison term is within the range of prison terms available for the offense for which community control had been imposed and the term does not exceed the prison term specified in the notice provided to the offender at the original sentencing hearing. R.C. 2929.15(B).

*State v. Stevens*, 2d Dist. Greene No. 2014-CA-10, 2015-Ohio-1051, ¶ 8.

**{¶ 15}** As noted above, in Case No. 2014-CR-1585, community control was imposed for theft of drugs, a felony of the fourth degree, and in Case No. 2016-CR-0225, community control was imposed for possession of heroin, a felony of the fifth degree. For a felony of the fourth degree, the maximum prison term is 18 months, and for a felony of the fifth degree, the maximum prison term is 12 months. R.C. 2929.14(A)(4), (5).

**{¶ 16}** As this Court has previously noted:

> "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013–Ohio–2021, 992 N.E.2d 491, ¶ 45 (2d

Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011–Ohio–3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006–Ohio–855, 846 N.E.2d 1, ¶ 38.

*State v. Armstrong*, 2d Dist. Champaign No. 2015-CA-31, 2016-Ohio-5263, ¶ 12.

**{¶ 17}** "In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A)." *Armstrong*, ¶ 16. R.C. 2929.14(C), however, is an exception to the presumption of concurrent sentences in R.C. 2929.41(A). R.C. 2929.14(C) provides:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

* * *

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime

by the offender.

**{¶ 18}** Finally, as this Court noted in *Armstrong*:

In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, [146 Ohio St.3d 516,] 2016–Ohio–1002, [59 N.E.3d 1231,] ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

*Armstrong*, ¶ 17.

**{¶ 19}** As this Court further noted:

* * * "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow*, 2016–Ohio–2884, 64 N.E.3d 553, ¶ 38 (2d Dist.). "[T]he question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record fails to support the trial court's findings." (Emphasis added.) *Id.*

*State v. Brewer*, 2d Dist. Greene No. 2016-CA-9, 2017-Ohio-119, ¶ 10.

**{¶ 20}** Having reviewed the record before us pursuant to the deferential standard set forth above, we cannot clearly and convincingly find that the record fails to support

the trial court's findings. In other words, we do not agree with Purk's argument that he poses a danger only to himself due to his drug use. As the State notes, Purk's initial offense involved theft of drugs from a medical center. Although it was to feed his habit, the medical center operates to heal sick patients by the legitimate administration of prescribed drugs. Thus, there is a societal interest which warrants protection. Purk's Ohio Risk Assessment Survey indicates a high risk of recidivism. We note also that Purk's Intervention in Lieu of Conviction Eligibility Report establishes that Purk was convicted of the following misdemeanor offenses: drug abuse in 2004, failure to comply in 2005, two theft offenses and domestic violence in 2007, and attempted telephone harassment and another theft in 2011. As the trial court noted, Purk was convicted of felony drug possession in the Miami County Court of Common Pleas in Case No. 2015-CR-245.

{¶ 21} It is significant that Purk continued to use drugs after receiving intervention in lieu of conviction and completing treatment at Nova House, in Case No. 2014-CR-1585. As noted, Purk was subsequently charged in 2016-CR-0225 after overdosing at the Gateway Shelter on January 20, 2016. After completing the MonDay program, Purk was transported to Samaritan Behavioral Health, to receive aftercare and Vivitrol injections, and at disposition, the court noted that as Purk was "about to receive the shot, you ran from Samaritan Behavioral." Purk then subsequently overdosed. Despite multiple opportunities, Purk's history indicates that he is not amenable to continued treatment, contrary to defense counsel's suggestion. Furthermore, his criminal history contains violence and theft which establish a risk of harm to others. Since the record supports the court's findings, we conclude that Purk's assigned error lacks merit, and it is accordingly overruled.

{¶ 22} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J. and FROELICH, J., concur.

Copies mailed to:

Michael J. Scarpelli
Hilary Lerman
Hon. Steven K. Dankof